UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FIX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21-cv-2843 |
| | ) | Judge Sharon Johnson Coleman |
| The CITY OF CHICAGO, Illinois, a | ) | |
| Municipal Corporation, et al, | ) | |
| | ) | |
| Defendants. | ) | |

___

| | | |
|---|---|---|
| GABRIEL CHINCHILLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 21-cv-2846 |
| | ) | |
| The CITY OF CHICAGO, Illinois, a | ) | Judge Sharon Johnson Coleman |
| Municipal Corporation, et al, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S PARTIAL MOTION
TO DISMISS PLAINTIFF' JOHN FIX'S *MONELL* CLAIM**

Defendant City of Chicago ("the City"), by and through its attorney, Celia Meza, Corporation Counsel for the City of Chicago, for its partial motion to dismiss Plaintiff's *Monell* claim, states as follows:

**INTRODUCTION**

Plaintiff's Amended Complaint (Plaintiff's Complaint) claims that the Defendant Officers used excessive force against him, illegally detained him, failed to intervene in these constitutional violations and conspired to violate Plaintiff's constitutional rights during a protest on May 31, 2020. Dkt. 42. In Count V of his Complaint, Plaintiff further claim that these alleged constitutional violations render the City liable under *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).

1

Plaintiff alleges that the City has as widespread policies a failure to train and/or supervise its officers, a code of silence, and a failure to investigate and discipline its officers. However, Plaintiff fails to state a *Monell* claim because Plaintiff fails to provide well-pled allegations that support each of the three elements of such a claim. Therefore, the City respectfully requests this Honorable Court dismiss Plaintiff's *Monell* claim.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's statement of claims requires more than labels, conclusions, or a recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

To state a *Monell* claim post-*Iqbal*, a plaintiff must plead factual content allowing the court to draw the reasonable inference that the municipality maintains the problematic policy or practice in question. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). This entails "provid[ing] some specific facts to support the legal claims asserted in the complaint" and must provide "enough detail about the subject matter of the case to present a story that holds together." *Id.*; *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). This standard is a sliding scale that requires more factual specificity for more serious levels of claims. *McCauley*, 671 F.3d at 616; *Swanson v. Citibank*, N.A., 614 F.3d 400, 404-05 (7th Cir. 2010). To that end, the plaintiff's facts should be relevant to the story they assert and not merely asserted to cast the municipality in a bad light in an attempt to get to discovery. A threadbare recital of the elements supported by conclusory statements is disregarded. *Brooks* at 581. Additionally, only factual allegations can form the basis of this liability; conclusory statements and regurgitated legal elements are disregarded. *McCauley*, 671 F.3d at 618; *Iqbal*, 556 U.S. at 678–79.

The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Chancey v. Suburban Bus Div. of Regional Transp. Authority*, 52 F.3d 623, 626–27 (7th Cir. 1995). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S. at 558. The Court need not strain to find favorable inferences that are not apparent on the face of the complaint. *Coates v. Illinois State Board of Ed.*, 559 F.2d 445, 447 (7th Cir. 1977).

**ARGUMENT**

To state a *Monell* claim, a plaintiff must show "(1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning that the municipal action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 95 F.3d 945, 950 (7th Cir. 2020). Failure to establish any one element dooms a *Monell* claim. In *McCauley*, the Seventh Circuit held that a *Monell* claim was properly dismissed when the plaintiff alleged no more than "legal elements of the various claims." *McCauley* 671 F.3d at 618-619.

Because Plaintiff has not pled facts sufficient to plausibly demonstrate each element of his *Monell* claim, Plaintiff's *Monell* claim should be dismissed.

**I. Plaintiff Fails to Demonstrate "Widespread Practice" Element**

"To survive a motion to dismiss a *Monell* claim, a plaintiff must 'plead facts that show that there is a true municipal policy at issue, not a random event.'" *Barrios v. City of Chicago*, No. 15 C 2648, 2016 WL 164414, at *13 (N.D. Ill. Jan. 14, 2016) (citing *Liska v. Dart*, No. 13 C 1991, 2014 WL 3704635, at *10 (N.D. Ill. July 23, 2014)); *Calhoun*, 408 F.3d at 380. Although there is no bright-line rule for determining when conduct rises to the level of a policy, custom, or practice, *see Wilson v. Cook Cnty.*, 742 F3d 775, 780 (7th Cir. 2014), "isolated incidents of allegedly unconstitutional conduct are insufficient to establish a widespread practice." *Nettles-Bey v. Burke*, 2015 WL 4638068, at *12 (N.D. Ill. Aug. 4, 2015). In determining whether a plaintiff has sufficiently pled a widespread practice in a *Monell* claim, a court examines "the instances of misconduct alleged, the circumstances surrounding the alleged constitutional injury, and additional facts probative of a widespread practice or custom." *Williams v. City of Chicago*, 315 F. Supp.3d 1060, 1079 (N.D. Ill. June 1, 2018).

Here, Plaintiff alleges that the City has as widespread policies a failure to train and/or supervise its officers, a code of silence, and a failure to investigate and discipline its officers.

Complaint at, *e.g.*, ¶¶ 27-45, 67-70. The bulk of the allegations Plaintiff makes concern the findings of the 2017 Department of Justice Report Investigation into the Chicago Police Department ("DOJ Report," attached hereto as Ex. A), the 2016 Police Accountability Task Force report, statements made by then-Mayor Rahm Emanuel, and former Superintendent Kline, and outdated discussions of past protests. *Id*. at, *e.g.*, ¶¶ 35-40; 47-62.

But Plaintiff has failed to plead facts sufficient to establish that any of these supposed policies existed in May 2020 such that they could reasonably and fairly be attributed to the City. Again, *Iqbal*, *McCauley*, and their progeny have established that merely stating that a policy exists in a conclusory fashion is not enough. A plaintiff must plead facts strong enough to allow a court to determine plausible entitlement to relief, and Plaintiff have failed to do that here.

For instance, it is not enough to note that the DOJ Report issues numerous criticisms of the Chicago Police Department as it existed in 2016. A plaintiff must first plead facts that show that they remained the same, and he must connect the criticisms contained therein to his own case. And indeed, the DOJ Report explicitly says as to the code of silence that it had not determined how widespread it was at the time of its investigation. "We cannot determine the exact contours of this culture of covering up misconduct, nor do we know its precise impact on specific cases." DOJ Report at P. 75. The City urges the Court to follow the persuasive authority of *Carmona v. City of Chicago*, 2018 WL 1468995 (N.D.Ill. March 26, 2018)(St. Eve, J.) The *Carmona* court held that after-the-fact citation to the DOJ report was insufficient to save a poorly pled *Monell* claim. "The DOJ report certainly identifies serious shortcomings in CPD's supervisory systems but the Court cannot countenance it as a master key to unlock discovery's door for any *Monell* claim against the City, no matter how scantily the plaintiff connects his claim to the report's findings." *Id*. at *4.

5

The City respectfully contends that the existence of the DOJ Report is not sufficient to save Plaintiff's *Monell* claim.

Nor are statements by city officials that a code of silence exists. Taken at face value, the statements merely show that the officials believe that there is a code of silence of some sort. The statements do not show whether they believe that the code of silence is so widespread that it should be considered the official practice of the City or whether the examples of officers covering for one another are all-too-frequent yet isolated and random incidents. To state a valid claim as to the code of silence being a widespread practice of the City, Plaintiff would need to show evidence beyond that city officials have said that there have been examples of police coverups.

Plaintiff's historical discussion of decades old uses of excessive force at protests is an insufficient way of showing the same policies existed in May 2020. Plaintiff's expedition into history begins over a century and a half before the events in question here. Compl. ¶ 47. Plaintiff has not shown that any person working in a decision-making role in decades past still maintains a decision-making role in the *Monell* time period. Plaintiff devotes several paragraphs on detailing alleged bad acts committed in the 20th century, or over 20 years before the events at issue in this lawsuit, some more than 50 years before the underlying incident. *Id*. at ¶¶ 48-57. Plaintiff fails to show how 50-year-old protests and reports are relevant to his own alleged injury. *Id*. at ¶¶48-52. Plaintiff specifically states many of the actions during the 1960s were done at the behest of then Mayor Richard J. Daley. *Id*. at ¶ 48. Thus, those incidents have no connection whatsoever to Plaintiff's alleged injury. Plaintiff's discussion then turns to the 1990s, with all of the protests occurring between 24-30 years before Plaintiff's encounter with police. *Id*. at ¶¶ 54-57 These incidents are of the same relevance as the protests in the 1850s and 1960s – none. These incidents are far too removed from Plaintiff's alleged injury to show any sort of widespread practice.

Finally turning to the 21st century, Plaintiff 's amended complaint is still mired in incidents occurring years before his alleged injury. Plaintiff only brings up 3 incidents occurring within the 20 years before his encounter with police in May 2020. *Id*. at ¶¶ 58-61. The first occurred 17 years before with another allegation occurring 9 years before Plaintiff's encounter. The final incident alleged in Plaintiff's complaint, and anti-Trump protest from 2016, took place over 4 years before the incidents at issue in this case. Like Plaintiff's previous anecdotes, the 21st century protests he mentions are too remote in time and isolated to show any sort of widespread practice. Additionally, Plaintiff mentions a lawsuit filed presumably in the 2000s arising out of excessive force claims but does not provide the City with any facts allowing Defendant to identify it. *Id*. at ¶ 59. There is no date or name to assist Defendant City. It is unclear if this lawsuit arises out of the incident mentioned in the previous paragraph in 2003.

Plaintiff's reliance on Second City Cop, an anonymous blog, to show widespread practice is misplaced. *Id*. at ¶¶ 63, 64. Notably, Plaintiff's citation to Second City Cop deals exclusively with economic decisions by anonymous individuals alleged to be CPD officers. This quotation does not support Plaintiff's contention that CPD has a custom, policy, or practice of using excessive force on protesters or a code of silence. It simply alleges that a supposed CPD member expressed support for companies that did not openly display "wokeness." *Id*. at ¶ 63. It has nothing to do with Plaintiff's *Monell* claim. Plaintiff makes no attempt to show how widespread these beliefs are within CPD, nor does he show that any officer acted upon the stated opinions. Plaintiff does not even suggest that all posts are actually written by CPD officers, nor does he give a time frame of this post.

Plaintiff's reliance on the jury's finding in *Obrycka* is similarly misplaced. *Id*. at ¶ 70. Plaintiff's complaint is clear that the jury's determination that the City "had a widespread custom

and/or practice of failing to investigation and/or discipline its officers and/or code of silence" was based on facts available as of February 2007. The incident at issue in *Obrycka* occurred over 13 *years* before Plaintiff's encounter with CPD in May 2020, and the jury's decision is non-precedential. Multiple developments have occurred between the jury's finding in *Obrycka* and the events that are the subject of this lawsuit, *see infra*, Section II, that call into question the jury's findings.

Moreover, Plaintiff has cited minimal relevant examples that supposedly illustrate the alleged practices that led to constitutional violations he experienced. But more importantly, in a City of nearly 3 million people, Plaintiff's custom allegations are not plausible on their face to survive a motion to dismiss. 42 U.S.C. § 1983 states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, **custom**, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]

42 U.S.C. § 1983. (Emphasis added.)

"Congress included customs...because of the persistent and widespread discriminatory practices of state officials in some areas of the post-bellum South." *Monroe v. Pape*, 365 U.S. 167, 172 (1961). In *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 167-68 (1970), the Supreme Court defined a custom as "persistent and widespread ... practices," "systematic maladministration" of the laws, practices that are "permanent and well settled," and "deeply embedded traditional ways of carrying out ... policy." *Id*. The Supreme Court has also used the words "standard operating procedure" to describe a custom. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 485 (1986).

Far from stating any operating procedure, Plaintiff here references few other incidents similar to his own, all of which are far removed in time to this incident and each other, to assert

his widespread practice claim. The last protest mentioned in Plaintiff's complaint was in 2016, over 4 years before Plaintiff's interaction with CPD. Plaintiff concludes that there is "substantial evidence" that certain practices still exist within CPD. Compl. at ¶ 66. Yet, Plaintiff gives no example or even hint as to what that evidence may be. As previously detailed, Plaintiff's last factual allegations occur with the release of the DOJ Report in 2017 and an early 2016 protest. There is no showing of this "substantial evidence" of continuing practices in Plaintiff's complaint.

Furthermore, in a police department that made hundreds of thousands of arrests during the *Monell* period at issue, the few incidents cited by Plaintiff do not support a claim of a widespread practice, custom or claim that these arrests indicate standard operating procedure. The City asks the Court to take judicial notice that at the end of 2019, the City of Chicago had approximately 2.7 million residents, and employed over 13,000 police officers.[1] From 2017 to 2019, CPD conducted over 250,000 arrests, and received nearly 10 million calls for service.[2] Over this same period, COPA received 1,115 complaints of excessive force.[3] The Seventh Circuit has not issued any bright-line rules for what is necessary to show a widespread practice. It has, however, stated even three instances can be insufficient to "demonstrate that there is a policy at issue rather than a random event." *Thomas v. Cook Cnty. Sheriff's Office*, 604 F.3d 293, 303 (7th Cir. 2010). And more recently, it held that a *Monell* widespread practice claim was correctly considered

---

[1] A court may take judicial notice of matters of public record without converting a motion to dismiss to a motion for summary judgment, particularly of facts that are (1) not subject to reasonable dispute and (2) either generally known within the territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned. See, *e.g.*, *Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th. Cir. 2008); *Gen. Elec. Capital Corp v. Lease Resolution Corp.*, 128 F. 3d 1074, 1081 (7th Cir. 1997); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)(finding public court documents judicially noticeable.) (https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/tables/table-78/table-78-state-cuts/illinois.xls).

[2] (https://home.chicagopolice.org/wp-content/uploads/2020/09/19AR.pdf, pp. 45, 58; https://home.chicagopolice.org/wp-content/uploads/2019/07/2018AnnualReport-05July19.pdf, p. 66, 76 https://home.chicagopolice.org/wp-content/uploads/2019/03/Chicago-Police-Department-Annual-Report-2017.pdf, p. 84.

[3] https://www.chicagocopa.org/wp-content/uploads/2020/02/2019-COPA-Annual-Report.pdf, p. 24; https://www.chicagocopa.org/wp-content/uploads/2019/02/COPA-2018-Annual-Report-Final.pdf, p. 22

insufficient. *Flores v. City of South Bend*, 997 F.3d 725, 733 (7th Cir. 2021). In *Flores*, the Seventh Circuit held that allegations that officers sometimes speed were not enough to state a claim that there was a widespread practice by the City of allowing its officers to speed. "Finding otherwise would stretch the law too far, opening municipalities to liability for customs in all but the rarest occasions, as long as a plaintiff can find a few sporadic examples of an improper behavior." *Id*. Here, plaintiff has not even offered those sporadic examples during the *Monell* period.

Because Plaintiff has failed to demonstrate the existence of any claimed widespread policy, Plaintiff's *Monell* claim must be dismissed as insufficiently pled.

## II. Plaintiff Fails to State "Deliberate Indifference" Element

Even assuming *arguendo* that Plaintiff had alleged enough to meet the widespread practice element, Plaintiff would next have to establish the municipality's final policymaker was deliberately indifferent to the practice or practices in question. A plaintiff must plausibly allege that the City's policies demonstrate that the policies were adopted with "deliberate indifference" to their "known or obvious consequences." *Rasche v. Vill. of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003). "A showing of simple or even heightened negligence will not suffice." *Board of County Com'rs of Bryan County, Okl. V. Brown*, 520 U.S. 397. 407 (1997). Rather, the municipality's final policymaker must show that they effectively approve of the practice by turning a blind eye toward it.

To meet the standards of *Twombly*, *Iqbal*, *McCauley* and their progeny, Plaintiff must show rather than just say that the City's final policymaker knew that there were the widespread practices complained of and chose to effectively adopt those practices as its own. Moreover, Plaintiff would have to show that the City's final policymaker completely failed to act despite this knowledge. Here, Plaintiff does not even name the final policymaker or list facts that give plausibility to the

10

notion that the final policymaker knew and approved of the alleged practices Plaintiff would attribute to the City.

Plaintiff instead simply made conclusory allegations that the policymakers knew about the practices and failed to act. Complaint at, *e.g.*, ¶ 89. Plaintiff failed to specify how the policymakers allegedly knew and what their failure to act consisted of. In particular, the statements by City officials acknowledging the existence of a code of silence does not equate to the support of that code of silence, any more than the acknowledgement of any other problem confronting a municipality – from crime rates to unemployment levels to schooling -- is a support of that problem.

Moreover, the public record shows that the City has not failed to act. The City asks the Court to take judicial notice of Municipal Code of Chicago 2-78, a copy of which is attached as Ex. B. This ordinance, adopted by the City in 2016, established the creation of the Civilian Office of Police Accountability ("COPA"). It was meant to "provide a just and efficient means to fairly and timely conduct investigations within its jurisdiction, including investigations of alleged police misconduct and to determine whether those allegations are well-founded, applying a preponderance of the evidence standard; to identify and address patterns of police misconduct, to make policy recommendations to improve the Chicago Police Department and reduce incidents of police misconduct." Ex. B at 2-78-110. Even if one were to concede that COPA has not succeeded in eliminating or reducing police misconduct, its creation shows that the City was not deliberately indifferent to the issue.

Indeed, Plaintiff has pled himself out of court in terms of the deliberate indifference element.

First, Plaintiff has pled himself out of court by citing to the DOJ Report. The Report shows that the City has not embraced the alleged flaws in policing but has made efforts to combat them. The DOJ Report states, "During the year it took us to complete this investigation, the City of Chicago took action of its own." Ex. A at P. 3. It went on to say, "The City has acknowledged and begun to correct a number of deficiencies related to how officers use and are held accountable for force." *Id*. at P. 7. It notes that there have been "repeated, concerted reform efforts by the City and community members from all walks." *Id*. at P. 16. "Throughout the time our investigation has been underway, the City has undertaken positive steps to improve its accountability structure and repair its relationship with the community, and it should be commended for this." *Id*. at P. 48. In light of these statements from the DOJ Report, the City cannot be said to have turned a blind eye to the flaws the report addresses.

Second, Plaintiff refers to a criticism of the City's compliance with efforts to reform its police department. Complaint at ¶¶ 41-42, 71. The City asks to Court to take judicial notice of its having voluntarily entered into an agreement to reform its police department in the Consent Decree. See *State of Illinois v. Chicago*, No. 17 CV 6260 at Dkt. 703. ("Consent Decree"). The City agreed to enter into the Consent Decree to "ensure that the City and CPD deliver services in a manner that fully complies with the Constitution and laws of the United States and the State of Illinois, respects the rights of the people of Chicago, builds trust between officers and the communities they serve, and promotes community and officer safety. In addition, this Agreement seeks to ensure that Chicago police officers are provided with the training, resources, and support they need to do their jobs professionally and safely." Consent Decree at p. 1. That effort shows that the City has not turned a blind eye to the problems Plaintiffs complain of, nor adopted any

widespread practice as its own. In fact, it shows that the City is taking affirmative steps to prevent the sort of problems that Plaintiff references.

At worst, the facts pled by Plaintiff suggest that the City has failed to eliminate various practices. But as the Seventh Circuit teaches us, "Failing to eliminate a practice cannot be equated to approving of it." *Wilson v. City of Chicago*, 6 F.3d 1233, 1240 (7th Cir. 1993). Plaintiff's failure to offer well-pled facts to support the deliberate indifference element and his references to items showing that the City has attempted to correct problems with policing further doom his *Monell* claim.

### III. Plaintiff Fails to State "Moving Force" Element

Even assuming *arguendo* that Plaintiff had managed to show the existence of a widespread policy and deliberate indifference by the municipality, Plaintiff would have still one more hurdle to overcome. Plaintiff cannot simply rely on the existence of a bad policy and a constitutional violation. "A 'moving force' must be pleaded with enough facts to allow the court to infer a 'direct causal link between the municipal action and the deprivation of federal rights'" or constitutional injury. *Anderson v. Allen*, 2020 WL 5891406 (N.D. Ill. Oct. 5, 2020) (citing *Bryan County*, 520 U.S. at 397). See also *Jordan v. City of Chicago et al.*, No 20 CV 4012 (N.D.Ill. May 17, 2021)(holding that mere allegation that the code of silence was the moving force behind violation was insufficient to state a *Monell* claim.)

Plaintiff simply include conclusory statements rather than well-pled facts to suggest that the policies were the moving force behind what he experienced. Complaint at, e.g., ¶¶ 45, 100. Again, it is not enough to merely state that the City's supposed policies were the moving force under *Twombly*, *Iqbal* and their progeny. Plaintiff alleges

> [t]he historical failures by the City of Chicago to properly investigate allegations of excessive force by its members; its long history of failing to discipline its officers for

13

improper use of force; its failure to investigate or punish officers who participate in the code of silence … have all contributed to the continued uses of excessive force and continued existence of the code of silence ….”

*Id*. at ¶ 45. This conclusory statement and others are insufficient to connect the dots between the alleged custom or practice and Plaintiff's injury. These statements do not show how the City encourages the use of excessive force or the existence of the code of silence in relation to Plaintiff's injury. Plaintiff must plead facts to show a court that it is plausibly so that each and every one of the supposed practices of the City caused the supposed constitutional injury.

These conclusory and formulaic allegations are insufficient to state a claim against the City.

**IV. Failure to Train**

To the extent Plaintiff pleads a *Monell* claim based on an alleged failure to train, there is a stringent standard for failure to train or control cases, necessitating specific factual bases. *See Connick v. Thompson*, 563 U.S. 51 (2011); *City of Canton v. Harris*, 489 U.S. 378 (1989). A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to show deliberate indifference for purposes of failure to train. *Connick*, 563 U.S. at 62. A plaintiff must plead enough facts to plausibly suggest a "direct causal link" between the purported municipal policy and alleged constitutional deprivation. *Mikolon v. City of Chicago*, 2014 WL 7005257, at *4-5 (N.D. Ill., Dec. 11, 2014)(M. Shah). Anything short of deliberate indifference strays into *respondeat superior* territory, which is not recognized by §1983. *Winchester v. Marketi*, 2012 WL 2076375 at *4 (N.D. Ill. 2012).

Plaintiff provides no factual specificity beyond conclusions that the City of Chicago's failure to train led to Plaintiff's alleged injuries. This mere assertion that an improper policy exists is not supported by *any* facts. *See* Compl. at ¶¶ 38, 95, 96(a, e, n). Plaintiff's bare allegations lack factual enhancement and are the very type of boilerplate language *Iqbal* rejects as improper.

14

Plaintiff provides no factual specificity to demonstrate how any alleged policy or practice could possibly be the "moving force" behind his alleged injury. *See Board of Comm'rs of Bryan Cty v. Brown*, 520 U.S. 397, 400 (1997). Plaintiff fails to explain how and when the City allegedly "declined" to implement proper training and punishment procedures, how this pertains to any particular deficiency in the training of Chicago police officers, or that the City knew of such a deficiency and continued to train with said deficiency regardless.

Simply put, Plaintiff's conclusory statements are not enough to state a cognizable claim under *Iqbal*. Thus, Plaintiff's attempted *Monell* claims should be dismissed.

## **CONCLUSION**

In the wake of *Iqbal* and *McCauley*, many courts within this district have dismissed similarly deficient *Monell* claims for failing to meet the minimum pleading requirements. *See, e.g., Turner v. City of Chicago*, 2020 WL 1548957, 19 C 272 (N.D. Ill. March 31, 2020)(Coleman, J.)("threadbare assertion that other instances similar to this have occurred in some manner, by some unspecified officers during an unspecified time period" does not raise claim to relief above speculation); *Jones v. Hunt*, 2020 WL 814912, 19 C 4118 (N.D. Ill. Feb. 19, 2020)(Ellis, J.)(Plaintiff's "broad allegations of misconduct" that were "not tailored to identify particular police training procedures or policies" insufficient to state a *Monell* claim); *Bishop v. White*, 2019 WL 5550576, 16 C 6040 (N.D. Ill. Oct. 28, 2019)(Alonso, J.)(conclusory allegation of an isolated incident falls short of the *Twombly/Iqbal* standard); *Carmona v. City of Chicago*, 15 C 462, 2018 WL 1468995 at *3 (N.D. Ill. March 26, 2018)(St. Eve, J); *Brock v. City of Chicago Police Dept. et al.*, No. 17 C 3393 at Dkt. 38 (N.D. Ill. Nov. 29, 2017)(Feinerman, J.). *Hill v. City of Chicago*, 2014 WL 1978407 at *7 (N.D. Ill. May 14, 2014)(Ellis, J.) ("Although *Monell* claims may proceed

with conclusory allegations of a policy or practice, some facts must be pleaded to put the defendant on notice of the alleged wrongdoing"); *Foy v. City of Chicago*, No. 15 C 3720, 2016 WL 2770880, at *9 (N.D. Ill. May 12, 2016)(Castillo, J.); *Maglaya v. Kumiga*, No. 14 C 3619, 2015 WL 4624884 at *5 (N.D. Ill. Aug. 3, 2015)(Dow, J.).

Because Plaintiff has failed to satisfy the factual specificity required under *Iqbal* by merely alleging conclusory *Monell* allegations in the Second Amended Complaint, his *Monell* claim should be dismissed.

**Dated: September 21, 2021**               Respectfully submitted,

CELIA MEZA
Corporation Counsel, City of Chicago

By:     */s/ Andréa L. Campbell*
Andréa L. Campbell
Assistant Corporation Counsel Supervisor

Joi Kamper, Assistant Corporation Counsel Supervisor
Andréa L. Campbell, Assistant Corporation Counsel Supervisor
Cheryl Friedman, Assistant Corporation Counsel
City of Chicago Department of Law
Federal Civil Rights Litigation Division
2 North LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-8362 (Campbell)
Attorney No. 6308694
Andrea.Campbell@cityofchicago.org

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2021, I served a true and correct copy of the foregoing DEFENDANT CITY OF CHICAGO'S PARTIAL MOTION TO DISMISS PLAINTIFF'S MONELL CLAIM upon all counsel of record using the CM / ECF system, which causes a true and correct copy of the filed documents to be electronically delivered to all electronically registered parties of record.

`                           Respectfully Submitted,

*/s/ Cheryl Friedman*
Cheryl Friedman
Assistant Corporation Counsel